# EXHIBIT A

**CROSNER LEGAL, P.C.**
Michael R. Crosner (SBN 41299)
Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429
mike@crosnerlegal.com
zach@crosnerlegal.com
chad@crosnerlegal.com
craig@crosnerlegal.com

Attorneys for Plaintiff

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**01/09/2023 at 03:13:40 PM**
By: Angela Linhares,
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| NIKOLAS CHAPLIN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>WALMART INC.,<br><br>    Defendants. | Case No.:  23CV025397<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nikolas Chaplin ("Plaintiff") brings this action against Defendant Walmart Inc. ("Defendant" or "Walmart"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is a consumer protection action that seeks to remedy the unlawful, deceptive, and misleading business practices of Defendant with respect to the marketing and sales of its Parent's Choice Gripe Water products ("Parent's Choice Gripe Water" or "Products").

2.      Defendant distributes, markets, and sells a Product named "Parent's Choice Gripe Water" as an effective remedy for the symptoms associated with colic in newborn babies and infants.

3.      Gripe water has been sold to unwitting parents as a treatment for colicky infants for over a century. It is considered a natural "folk" or "alternative" remedy. From a science-based standpoint, "alternative" medicine is a misnomer. When the clinical evidence demonstrates that an intervention is effective, it becomes a part of accepted medicine. Yet many "alternative," and natural "folk" treatments are sold in the absence of evidence and when the scientific evidence shows otherwise. Defendant takes advantage of this misconception by placing the words "Gripe Water" on the front of the Parent's Choice Gripe Water packaging.

4.      None of the ingredients in Parent's Choice Gripe Water provide relief from stomach discomfort, gassiness, or any of the other symptoms of colic. Scientific studies have found that gripe water is ineffective for treating colic in newborns and may in fact increase the risk of vomiting and constipation. No respected medical practitioner recommends the use of herbal remedies or gripe water for use in colicky infants. Defendant is peddling snake oil at the expense of desperate consumers.

5.      To make matters worse, Defendant does not disclose to consumers the dangers of the Parent's Choice Gripe Water's ingredient sodium bicarbonate, which is more commonly known as baking soda. Numerous scientific publications warn that the ingredient should not be given to infants because of harmful side effects. In fact, the leading baking soda brand warns "Do not administer to

children under age 5." Reasonable consumers would not have purchased the Products had they known of that the Products can harm their infant's health. Defendant knowingly sells the Products despite having actual knowledge that they contain an ingredient that is dangerous to the health of infants.

6. Throughout the Class Period Defendant manufactured, sold, and distributed Parent's Choice Gripe Water using a marketing and advertising campaign that it is an effective remedy for the signs and symptoms of colic including stomach discomfort.

7. Defendant communicates the same substantive colic symptom relief message throughout its advertising and marketing of Parent's Choice Gripe Water. Accordingly, each consumer who has purchased Parent's Choice Gripe Water has been exposed to Defendant's unlawful and misleading advertising.

8. As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Defendant has caused Plaintiff and the members of the Class to purchase a falsely advertised product which does not, and cannot, perform as represented. Plaintiff and other similarly situated consumers have been harmed in the amount they paid for Parent's Choice Gripe Water.

9. Plaintiff brings this action individually, and on behalf of all purchasers of Parent's Choice Gripe Water products, to halt Defendant's unlawful sales and marketing of these products and for violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.* and for unjust enrichment.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure § 410.10.

11. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant has intentionally availed itself of the

markets within California through its advertising, marketing, and sales of Parent's Choice Gripe Water to consumers, including Plaintiff.

12.     Venue is proper in this Court because Defendant is doing business in this County, and Plaintiff purchased Parent's Choice Gripe Water in this County.

**PARTIES**

13.     Plaintiff Nikolas Chaplin is an individual consumer who, at all times relevant to this action, was a citizen of and resided in California. Before purchasing the Parent's Choice Gripe Water products, Plaintiff saw Defendant's representations by reading the label of Parent's Choice Gripe Water including Defendant's representations on the packaging that the Product is "Gripe Water" comparable to "Mommy's Bliss Gripe Water Original." In reliance on the claims at issue made on the label and on the belief that the products were safe for infants, Plaintiff purchased Parent's Choice Gripe Water for his child that was suffering from colicky symptoms between approximately 2019 and 2020 at Walmart retail stores in California, including in Alameda County. Relying on the Product's colic relief representations, Plaintiff paid approximately $6 for Parent's Choice Gripe Water. Had Plaintiff known the truth—that the Product has been found to be harmful to infants and does not provide any relief from the symptoms of colic in infants—he would not have purchased the Parent's Choice Gripe Water. Plaintiff did not receive the benefit of the bargain, because Defendant's Parent's Choice Gripe Water does not and cannot improve the symptoms of colic as advertised. By purchasing the falsely advertised product, Plaintiff suffered injury-in-fact and lost money. Plaintiff continues to desire to purchase a colic relief product that actually reduces the symptoms of colic, and he would purchase a colic relief product including the Product in the future if it worked as advertised and was safe for infants and children to consume. However, as a result of Defendant's ongoing false and unlawful advertising, Plaintiff will be unable to rely on the advertising when deciding in the future whether to purchase Parent's Choice Gripe Water.

14.     Defendant Walmart Inc. is a publicly-traded Delaware corporation, with a principal place of business in Bentonville, Arkansas. Defendant manufactures, markets, and advertises and distributes Parent's Choice Gripe Water products throughout the United States, including in

California. Defendant manufactured, marketed, and sold Parent's Choice Gripe Water products during the Class Period. The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Parent's Choice Gripe Water were primarily carried out by Defendant.

15.    Walmart sells the Parent's Choice Gripe Water products under the brand name "Parent's Choice" which is "Walmart's exclusive, private brand that today extends beyond infant formula."[1] Defendant markets itself as a trustworthy manufacturer of the Products: "We offer everything you need from bath time to bed time and every time in between, all with the high quality we know your little one needs."[2]

**FACTUAL BACKGROUND**

16.    Defendant's Parent's Choice Gripe Water products are sold nationwide at Walmart retail chains.

17.    Gripe water is commonly known as a treatment for infant stomach discomfort and the other symptoms of infantile colic.

18.    Dictionary.com defines "gripe water" as "a solution given to infants to relieve colic."[3] Similarly, the online Collins Dictionary defines "gripe water" as "a solution given to infants to relieve colic,"[4] the online MacMillan Dictionary defines "gripe water" as "a medicine for treating babies who have stomach pain,"[5] and the online Oxford's Learner's Dictionaries defines "gripe water as "medicine that is given to babies when they have stomach pains."[6]

19.    The packaging of Parent's Choice Gripe Water is depicted below:

---

[1]    https://www.parentschoicebaby.com/about-parents-choice.aspx (last visited Nov. 29, 2022)
[2]    https://www.walmart.com/ip/Parent-s-Choice-Gripe-Water-Unflavored-4-oz/239077181 (last visited Nov. 29, 2022).
[3]    https://www.dictionary.com/browse/gripe-water#:~:text=noun,to%20infants%20to%20relieve%20colic (last visited Nov. 29, 2022).
[4]    https://www.collinsdictionary.com/us/dictionary/english/gripe-water (last visited Nov. 29, 2022).
[5]    https://www.macmillandictionary.com/us/dictionary/british/gripe-water (last visited Nov. 29, 2022).
[6]    https://www.oxfordlearnersdictionaries.com/us/definition/english/gripe-watertm (last visited Nov. 29, 2022).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

 

17   20.     As shown above, the packaging for Parent's Choice Gripe Water represents that it is

18   Gripe Water, implying that it is an effective remedy for the symptoms of colic. The Products'

19   packaging also refers consumers to Mommy's Bliss Gripe Water which claims that the product

20   "relieves occasional stomach discomfort from Gas, Colic, Fussiness, Hiccups." To further reinforce

21   that the Parent's Choice Gripe Water is an ineffective treatment for the symptoms of colic, Walmart

22   places its Parent's Choice Gripe Water next to the Mommy's Bliss Gripe Water and other gripe

23   water products on the shelves of Walmart retail stores.

24   21.     Defendant also represents that the Parent's Choice Gripe Water is a safe and effective

25   product for infants as young as 2 weeks old. The packaging states that there is a "Recommended

26   Serving" for Infants 2 weeks to 6 months of age:

27
28

CLASS ACTION COMPLAINT

1
2
3
4
5

**DIRECTIONS: Shake well.** Slowly dispense liquid, toward side of mouth/inner cheek, using the provided dropper or syringe up to 6 times in 24-hour period. We recommend discarding 6 weeks after opening.

**RECOMMENDED SERVING:**
Infants 2 weeks to 1 month of age:  2.5 mL
Babies 1 to 6 months of age:  5 mL
Children 6 months and older:  10 mL
Adults:  30 mL

6      22.    Defendant's Parent's Choice Gripe Water contains the following ingredients:

7 "ORGANIC GINGER EXTRACT, ORGANIC FENNEL EXTRACT, PURIFIED WATER,

8 VEGETABLE GLYCERIN, SODIUM BICARBONATE, CITRUS SIGFLAVONOID EXTRACT,

9 CITRIC ACID, POTASSIUM SORBATE."[7]

10      23.    On its website, Walmart represents the following directly below the Parent's Choice

11 Gripe Water product images: "Help relieve your baby's upset tummy with Parent's Choice Original

12 Gripe Water, 2 Weeks+. This herbal supplement solution helps treat gassiness and stomach

13 discomfort. … Discomfort in your little ones stomach can be frustrating and upsetting, but it's

14 simple to treat."

**About this item**

**Product details**

Herbal Supplement with Organic Ginger & Fennel Extracts, 4oz

Help relieve your baby's upset tummy with Parent's Choice Original Gripe Water, 2 Weeks+. This herbal supplement solution helps treat gassiness and stomach discomfort. Our 4-fluid ounce package is convenient for storing in your medicine cabinet or packing in a baby bag for on-the-go use. Discomfort in your little ones stomach can be frustrating and upsetting, but it's simple to treat. All you need to do is slowly dispense the liquid grip water towards the side of your child's inner cheek, using the provided dropper or syringe up to 6 times in a 24-hour period. Your baby will be back to their happy and playful self in no time.

Parent's Choice provides parents with baby and toddler products you need at a price that won't push your budget over the edge. We offer everything you need from bath time to bed time and every time in between, all with the high quality we know your little one needs.

(the "Website Claims"). A printout of Defendant's website as of November 30, 2022, is attached

hereto as **Exhibit 1.**

      24.    Defendant's website also states that Parent's Choice Gripe Water will treat the flu.

---

[7]    https://www.walmart.com/ip/Parent-s-Choice-Gripe-Water-Unflavored-4-oz/239077181 (last visited Nov. 30, 2022)

1  These advertising statements are highlighted below:[8]



25.    The labeling and Website Claims violate federal and state law because they imply, as Walmart intends, that the Products are capable of treating the symptoms of disease. On its Website, Walmart admits that "similar items" to the Parent's Choice Gripe Water are FDA approved medications such as Parent's Choice Baby Cough Syrup and Parent's Choice Infant Pain & Fever Acetaminophen:[9]

---

[8]    https://www.walmart.com/ip/Parent-s-Choice-Gripe-Water-Unflavored-4-oz/239077181 (screen shot taken on Nov. 22, 2022)

[9]    https://www.walmart.com/ip/Parent-s-Choice-Gripe-Water-Unflavored-4-oz/239077181 (screen shot taken on Nov. 22, 2022)

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15      26.    None of the ingredients in Parent's Choice Gripe Water have been shown to provide

16  relief from the symptoms of colic in infants including stomach discomfort.[10] In fact, the scientific

17  community ***recommends against*** the use of gripe water in children and does not recommend any of

18  the ingredients in Parent's Choice Gripe Water for use in colicky infants. The ingredients in Parent's

19  Choice Gripe Water are not effective at providing any of the advertised benefits. Further, Defendant

20  does not disclose that the sodium bicarbonate in the Products is considered harmful to infants and

    children.
21
22
23
24
25
26

27  _____
    [10]    Divya Jacob, *Why Is Gripe Water Banned?* MedicineNet available at
28  https://www.medicinenet.com/why_is_gripe_water_banned/article.htm (last visited Nov. 9,
    2022).

CLASS ACTION COMPLAINT

**DEFENDANT'S FALSE, MISLEADING, AND UNLAWFUL ADVERTISING**

*Defendant's Parent's Choice Gripe Water is Harmful to Infants*

27.    The Parent's Choice Gripe Water products contain sodium bicarbonate which is more commonly known as baking soda.

28.    Material Safety Data Sheets state that sodium bicarbonate "May be harmful if swallowed. Causes skin mild irritation. Causes eye irritation," "Harmful if swallowed," and "IF SWALLOWED" "Immediately call poison center or doctor. DO NOT induce vomiting."[11] The "Potential Health Effects" of sodium bicarbonate include "Causes gastrointestinal tract irritation."[12]

29.    The National Capital Poison Center states that use of "baking soda as a homemade antacid can cause rapid formation of gas in the stomach. You should not use baking soda to treat stomach upset without specific direction from your healthcare provider. Stomach ruptures can occur with baking soda use after alcohol binging or a large meal. For these reasons, it is better to use over-the-counter antacid products such as calcium carbonate (like Tums®), which work in a similar way but are much safer."[13] It also warns that if baking soda is swallowed, Poison Control should be called.

30.    The leading baking soda brand, Arm & Hammer, states on the packaging "Do not administer to children under age 5" and "KEEP OUT OF REACH OF CHILDREN If swallowed, get medical help or contact a Poison Control Center right away."[14]

31.    Numerous published reports of dangerous health outcomes have resulted from the use of sodium bicarbonate. An infant developed proteinuria (high levels of protein in urine) caused by the addition of sodium bicarbonate to infant formula.[15] In a report titled *Baking soda: a potentially fatal home remedy*, an infant was administered baking soda to "help the baby burp." The authors

---

[11] *See* https://files.dep.state.pa.us/OilGas/BOGM/BOGMPortalFiles/IndustryResources/InformationalResources/HDD_Saftey_Data_Sheets/Sodium_Bicarbonate_SDS.pdf.

[12]    https://fscimage.fishersci.com/msds/20970.htm (last visited Nov. 30, 2022).

[13]    https://www.poison.org/articles/baking-soda (last visited Nov. 30, 2022).

[14]    https://fda.report/DailyMed/b70f52eb-e3a6-4b08-b38b-8855f736ed65 (last visited Nov. 30, 2022)

[15]    Wechsler D et al. Apparent Proteinuria as a Consequence of Sodium Bicarbonate Ingestion. Pediatrics. 1990;86(2):318-319.

10

reported that an infant developed "life-threatening complication" after consuming sodium bicarbonate and concluded that several case reports have been published which "emphasizes the need for warnings on baking soda products."[16]

32.   Al-abri and Kearny (2014) conducted a retrospective systematic review of all symptomatic cases from 2000 to 2012 involving sodium bicarbonate. One hundred ninety-two cases were identified. The authors concluded that the "misuse of baking soda can result in serious electrolyte and acid/base imbalances."[17] The study also noted several serious complications from the use of baking soda in children and that since 1990 the printed instructions for the leading baking soda product "were modified to advise against administering the product to children under age 5 years, because of reported seizure and respiratory depression in children." In one case, a dose of 1-3 tbs of baking soda was associated with death of a child and was reported by the National Poison Data System. In several cases, the use of baking soda was reported to cause significant electrolyte and acid-base abnormalities including alkalosis, hypernatremia, hypokalemia, hypochloremia and hypocalcaemia. The authors issued a stern warning, "healthcare providers should warn parents against using baking soda as an antacid in younger children. We also found further evidence that use of baking soda in children may be a common practice by the public after reviewing and noting several information calls to the California Poison Control System regarding from parents contemplating its use for their children."

33.   Even Walmart's gripe water competitors explain that sodium bicarbonate should not be given to children and can cause an imbalance in an infant's electrolytes which can lead to serious health problems:

> Sodium Bicarbonate (a.k.a. Baking Soda). Sodium bicarbonate is an alkali (antacid) which alters the naturally occurring pH of a baby's stomach acid. It may counteract some discomfort caused by natural acidity in a baby's tummy. However, stomach acid serves a useful purpose because it helps the body digest food and protects the gut from infections. Disrupting the stomach's natural acidity has led to concerns about risk for infection and malabsorption of nutrients like calcium, magnesium, B12, and iron. For this reason, sodium bicarbonate-containing products are not to be

---

[16]   Nichols MH et al. Baking Soda: a potentially fatal home remedy. Pediatr Emerg Care. 1995;11(2):109-111.

[17]   Al-Abri SA, Kearney T. Baking soda misuse as a home remedy: case experience of the California Poison Control System. J Clin Pharm Ther. 2014 Feb;39(1):73-7.

CLASS ACTION COMPLAINT

consumed by "children under 5 years of age", as stated clearly on antacid and baking soda boxes. Antacids always warn against extended use: "Do not use for more than 2 weeks." According to some doctors, sodium bicarbonate can cause an imbalance in babies' electrolytes, which can also lead to serious problems. Please note that antacids do interact with or prevent the absorption of many medications. According to Medline Plus, a service of the National Library of Medicine, antacids (e.g. sodium bicarbonate) "should not be given to young children (up to 6 years of age) unless prescribed by their doctor." Since children often cannot describe their symptoms well, doctor visits are advisable before giving any antacids to children. The condition may require other treatment. In such cases, not only will antacids not help, they may actually lead to unwanted side effects and/ or worsening of condition. Medline also warns against taking large doses of sodium bicarbonate with large amounts of milk or milk products. To do so may increase the chance of side effects.[18]

34.    Medical News Today states that "a parent or caregiver should not give baking soda or any medications containing sodium bicarbonate to a child" because it "is not safe."[19]

35.    Drs. Brown, Whaley, and Arnold published an article titled "Acute Bicarbonate Intoxication from a Folk Remedy." An infant that was in good health was given sodium bicarbonate as a cold remedy which resulted in hypernatremia, an acute metabolic alkalosis, and apnea. The authors issued a public warning: "The use in infants of home remedies containing bicarbonate should be discouraged."[20]

36.    An article published in *Emergency Nurse* similarly warned that sodium bicarbonate "can cause hypernatraemia and other metabolic disturbances."[21]  The article noted that "poisoning has occurred after use of sodium bicarbonate as a remedy for gastrointestinal" symptoms in infants.

37.    Defendant's Parent's Choice Gripe Water should not be given to infants because harmful side-effects can result. Instead, Defendant promotes the use of the Product as a treatment for infants as young as two weeks old. Defendant does not disclose any potential dangers related to use of the Products in infants other than a possible allergy warning which is not relevant to the sodium bicarbonate ingredient.

---

[18] https://www.coliccalm.com/baby_infant_newborn_articles/baby_colic_treatment.htm#SodiumBicarb (last visited Nov. 30, 2022).

[19] https://www.medicalnewstoday.com/articles/dangers-of-drinking-baking-soda#benefits (last visited Nov. 30, 2022).

[20] Brown A.L. et al. Acute Bicarbonate Intoxication From a Folk Remedy. Am. J. Dis. Child. 1981;135:965.

[21] Bates N. Poisoning: Sodium Chloride and sodium bicarbonate. Emergency Nurse. 2003;11(2):33-37.

*Defendant's False and Misleading Advertising*

38.    Gripe water products were originally developed to treat the symptoms of malaria during the 1800s and originally contained a mixture of baking soda, alcohol, and herbs. Gripe water was thought to help calm a fussy baby. However, any perceived benefit was due to the presence of alcohol. Modern formulations of gripe water do not contain alcohol and often do not contain baking soda. However, that does not stop companies, like Defendant, from seeking to capitalize from name recognition of gripe water.

39.    Infants do not need or require the ingredients in Parent's Choice Gripe Water. There is no required daily intake for any of the ingredients in Parent's Choice Gripe Water—the Centers for Disease Control and Prevention (CDC) states that a child only needs essential vitamins and minerals such as Vitamin D, iron, and zinc to grow healthy and strong.[22] An infant's digestive system does not need any of the ingredients in Parent's Choice Gripe Water because the digestive system maintains homeostasis on its own along with the breast milk/formula consumed. Consequently, if a substance such as Parent's Choice Gripe Water disrupted this homeostasis, disease and/or increased bacteria, allergies, and intestinal irritation would result.

40.    The scientific community has warned against the use of gripe water for good reason— "newborn infants should not be given food or drink other than breast milk, unless medically indicated."[23]

41.    The scientific community cautions that use of gripe water products like Parent's Choice Gripe Water is an "irrational practice" which increases the risk of increased bacteria, allergies, and intestinal irritation.[24] Health Link, a health information service in Canada, also warns new parents: "Do not use unapproved, unproven, or potentially dangerous substances or methods as treatment for your baby who has colic."[25] The World Health Organization specifically recommends

---

[22]    *See* https://www.cdc.gov/nutrition/infantandtoddlernutrition/vitamins-minerals/index.html (last visited Nov. 18, 2022).
[23]    Adhisivam B. Is gripe water baby-friendly? J. Pharmacol. Pharmacother. 212 Apr;3(2):207-8.
[24]    *Id.*
[25]    https://www.healthlinkbc.ca/pregnancy-parenting/parenting-babies-0-12-months/baby-health/colic-harmful-treatments (last visited Nov. 30, 2022).

CLASS ACTION COMPLAINT

that mothers should exclusively breastfeed infants for optimal health.[26] The Canadian Paediatric Society likewise warns "Talk to your doctor before using over-the-counter or 'natural' products for colic. There is very little scientific evidence to show that these products help."[27]

42.    Accordingly, the scientific community has stated that gripe water advertising "need[s] to be curbed and we should ensure that no promotion for infant foods or drinks other than breast milk is done … doctors should stop prescribing these … medications and laws should be made stringent to prevent over the counter access of the same."[28]

43.    Evidence-based professional and national recommendations for the treatment of infant gastrointestinal issues recommend against the use of gripe water, herbal supplements, or any of the ingredients in Parent's Choice Gripe Water.

44.    The American Academy of Family Physicians (AAFP) does not recommend the use of gripe water and herbal supplements including herbal ingredients such as fennel, chamomile, lemon balm.[29] The AAFP warns that the use of herbal products should not be administered as a treatment for infantile colic: "parents should be cautioned about their use."[30] The AAFP also notes that use of herbal products can create a "potential interference with normal feeding."

45.    Ellwood et al. (2020) performed a systematic review of the available guidelines for the treatment of infantile colic which was published in the *British Medical Journal*.[31] The aim of the study was to compare meta-data from different systematic review and national treatments guidelines for infantile colic on common outcomes. The authors specifically assessed the effectiveness of several treatment modalities on colic symptoms including infant crying time, sleep distress and adverse events. The authors note the herbal mixtures "may be harmful because herbal

---

[26]    Vallenas C, Savage F. *Evidence for the ten steps to successful breastfeeding.* Geneva: World Health Organization/CHD/98.9; 1998. pp. 48–61.

[27]    https://caringforkids.cps.ca/handouts/pregnancy-and-babies/colic_and_crying (last visited Nov. 9, 2022)

[28]    Adhisivam B. Is gripe water baby-friendly? J. Pharmacol. Pharmacother. 2012 Apr;3(2):207-8.

[29]    Johnson J.D. et al. Infantile colic: recognition and treatment. American Family Physician. 2015;92(7):577-582.

[30]    Roberts D.M. et al. Infantile Colic. American Family Physician. 2004;70(4):735-740.

[31]    Ellwood J. et al. Comparison of common interventions for the treatment of infantile colic: a systematic review of reviews and guidelines. BMJ Open. 2020;10e035405.

14

mixtures may affect optimal milk consumption." The analysis found that "herbal supplements (e.g., fennel)" are "non-recommended interventions" by The National Institute for Health and Care Excellence (NICE) on two separate occasions (2015 and 2017). Similarly, gripe water products were reported as a "non-recommended intervention" by American Academy of Family Physicians.

46.     The National Institutes of Health (NIH) "Colic and crying – self-care" guide does not recommend the use of gripe water or any other herbal supplements.[32] Instead, the NIH recommends several techniques to comfort and calm an infant.

47.     The National Health Service (NHS), the publicly funded healthcare system in England, recently published evidence-based treatment guidelines titled *Managing Colic in Infants Pathway*.[33] The NHS has a "Do not recommend" rating for herbal supplements like Parent's Choice Gripe Water.

48.     The Royal Children's Hospital (RCH) published evidence-based clinical practice guidelines for unsettled or crying babies in 2019. The guideline has been endorsed by the Paediatric Improvement Collaborative and specifically does not recommend "colic mixtures (e.g., gripe water) – no proven benefit."[34]

49.     The British Journal of Family Medicine (BJFM) has published treatment guidelines for infantile colic. The BJFM guidelines "do not support the[] use" of herbal remedies.[35]

50.     Mount Sinai's Health Library warns "DO NOT give ginger to children under 2."[36] For fennel (*Foeniculum vulgare*), Mount Sinai states "DO NOT give these herbs to your child on your own."[37]

51.     Biagioli and colleagues published a systematic review to assess the effectiveness and safety of agents for reducing colic in infants younger than four months of age. The authors utilized

---

[32]     *See* MedlinePlus [Internet]. Bethesda (MD): National Library of Medicine (US) available at https://medlineplus.gov/ency/patientinstructions/000753.htm (last visited Nov. 9, 2022).
[33]     NHS. *Managing Colic in Infants Pathway* (September 2022).
[34] https://www.rch.org.au/clinicalguide/guideline_index/Crying_Baby_Infant_Distress/ (last visited Nov. 9, 2022).
[35]     Wall A. and Bogle V. Spotlight: infantile colic. BJFM. 2018;6(4).
[36]     https://www.mountsinai.org/health-library/herb/ginger (last visited No. 29, 2022).
[37]     https://www.mountsinai.org/health-library/condition/infantile-colic (last visited No. 29, 2022).

the standard methodological procedures of The Cochrane Collaboration. The "Authors conclusions" were "available evidence shows that herbal agents, sugar, … cannot be recommended for infants with colic."[38]

52.     In 2019, peer-reviewed treatment guidelines were published which found that "Herbal remedies should not be given as there are potential risks of side effects, which may interfere with the infant's feeding."[39] Instead, the guidelines recommend parental reassurance and an allergen-restricted diet for mothers with a history of food intolerance or allergies.

53.     Zhang et al. (2015) conducted a comprehensive study using data from the Infant Feeding Practices Study II, a longitudinal survey of women studied from pregnancy through the infant's first year. This was the first study to examine the prevalence of dietary botanical supplement use among US infants. The authors concluded that "many supplements and teas used were marketed and sold specifically for infants" and warn others that "supplements given to infants may pose health risks, health care providers need to recognize that infants under their care may be receiving supplements or teas."[40]

54.     Jain et al. (2015)[41] published a cross-sectional study examining 335 mothers of infants. The authors concluded that gripe water "administration is a common problem in infants and remains a significant challenge that thwarts exclusive breast feeding." The authors also commented that gripe water does not prevent infantile colic and may be associated with vomiting and constipation.

55.     Gutiérrez-Castrellón et al. (2017) performed a systematic review and network meta-analysis of clinical trials published between 1960 and 2015 for the treatment of infantile colic. Pooled interventions included in the network meta-analysis were herbal remedies, including the ingredients found in Parent's Choice Gripe Water. The authors reported wide confidence intervals

---

[38]     Biagioli_E, Tarasco_V, Lingua_C, Moja_L, Savino_F. Pain-relieving agents for infantile colic. Cochrane Database of Systematic Reviews 2016;9(CD009999).

[39]     Lam T.M.L et al. Approach to infantile colic in primary care. Singapore Med J. 2019;60(1):12-16.

[40]     Zhang Y. et al. Feeding of Dietary Botanical Supplements and Teas to Infants in the United States. Pediatrics. 2015;127(6):1060-1066.

[41]     Jain K. et al. Gripe water administration in Infants 1-6 months of age - a cross-sectional study.  Clin Diagn Res. 2015 Nov;9(11):SC06-8.

in the results with considerable heterogeneity which crossed the line of no effect. In conclusion, the authors did not recommend herbal medicine, including ingredients in Parent's Choice Gripe Water, for colic.[42]

56.    Defendant's Parent's Choice Gripe Water does not relieve colic or the signs and symptoms of colic including gassiness and stomach discomfort in newborns or infants.

***Defendant's Parent's Choice Gripe Water Unlawful Advertising Claims***

57.    Defendant's advertising of the Product's includes express and implied claims that it is intended to treat the symptoms of infantile colic, including gassiness and stomach discomfort. The FDA has stated that these types of advertising claims violate federal regulations which also violate state law.[43]

58.    Infantile colic refers to a widespread clinical condition in infants that causes inconsolable crying, fussing, hiccups, stomach discomfort, and irritability. These symptoms range from being benign to life-threatening.[44] The only proven treatment of colic is dicyclomine hydrochloride, an anticholinergic drug. However, its use is discouraged due to side-effects. This has not stopped companies like Defendant from exploiting struggling parents seeking to calm their newborns exhibiting prolonged periods of distress.

59.    Infantile colic is known to have a significant impact on infants and their families. Defendant takes advantage of these desperate parents by unlawfully advertising its Parent's Choice Gripe Water as a treatment for colic and its symptoms. The FDA has publicly warned that claims of colic relief classify the product as an unapproved drug which may result in fines, up to one year in jail, a permanent or temporary injunction, or seizure. *See* 21 U.S.C. §§ 332-334.

---

[42]    Gutiérrez-Castrellón P, Indrio F, Bolio-Galvis A, et al. Efficacy of Lactobacillus reuteri DSM 17938 for infantile colic. Systematic review with network meta-analysis. Medicine. 2017;96(51).

[43]    The FDA regulations at issue are incorporated into California law through the Sherman Food, Drug, and Cosmetic Law ("Sherman Law"). Health & Saf. Code § 110100. In addition to this blanket provision, the Sherman Law adopts the regulatory provisions at issue here. *See id.* at §§ 109925, 111550.

[44]    Savino F & Tarasco V, New treatments for infant colic. Current Opinion in Pediatrics. 2010;22:000-000.

60.    The Product's packaging states that it is "Gripe Water." Defendant uses the term "Gripe Water" because it is a well-known name for products that are intended to treat the symptoms of infantile colic and implies that the Product can treat stomach discomfort, gassiness, and the other symptoms of infantile colic. The Product's packaging also states "COMPARE TO MOMMY'S BLISS® GRIPE WATER." The labeling of the Mommy's Bliss Gripe Water products states that it "relieves occasional stomach discomfort from Gas, Colic, Fussiness, Hiccups." To further reinforce that the Parent's Choice Gripe Water is an effective treatment for the symptoms of colic, Defendant places its Parent's Choice Gripe Water next to the Mommy's Bliss Gripe Water and other gripe water products on the shelves of Walmart retail stores. The Website Claims accompany the packaging and form a textual relationship with the Parent's Choice Gripe Water labeling. The Website Claims state that the Product will "relieve you baby's upset tummy," that it is for ages "2 Weeks+," that it "helps treat gassiness and stomach discomfort," that the Product can be stored "in your medicine cabinet," and that "discomfort in your little ones stomach can be frustrating and upsetting, but it's simple to treat. All you need to do is slowly dispense the liquid grip water towards the side of your child's inner cheek, using the provided dropper or syringe up to 6 times in a 24-hour period. Your baby will be back to their happy and playful self in no time."

61.    In March 2018, the FDA found that a "Gripe Water" product advertised as "May aid on occasion your baby's problems with . . . cramping . . . ." established that the product was a drug under 21 U.S.C. § 321(g)(1)(B) because it was "intended for use in the cure, mitigation, treatment, or prevention of disease. … introducing or delivering these products for introduction into interstate commerce for such uses violates the Act."[45]

62.    On March 19, 2021, the FDA found that a "Gripe Water" product which was advertised on a promotional website with claims that the Gripe Water product "Gives instant relief to infants and babies ... due to gripe," "Relieve stomach pain caused by acidity and indigestion" and "Gentle antacid..." was an unapproved new drug.[46]

---

[45]    FDA Warning Letter to Ozarck Country Herbs, dated March 30, 2018, available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozark-country-herbs-542508-03302018 (last visited Nov. 9, 2022).
[46]    https://www.accessdata.fda.gov/cms_ia/importalert_190.html (last visited Nov. 29, 2022).

63.    In April 2020, the FDA stated that an advertising claim of "Colic Relief" is a claim that the product is intended for use as a drug and directed the company to contact the FDA's Center for Drug Evaluation and Research.[47]

64.    In June 2021, the FDA stated that a product advertised as "Helps soothe fussiness and crying in colicky babies" and "to reduce fussiness (crying) associated with colic" were unapproved drug claims because "a number of colicky infants have serious medical conditions[.]"[48]

65.    In February 2021, the FDA held that "Colic, Inflammation of the Belly, Abdominal pain …" advertising classified a product as "an unapproved new drug" which requires premarket approval.[49]

66.    Similarly, Kaiser Permanente's health encyclopedia states that gripe water is a "potentially dangerous treatment" for colic and that "companies sell gripe water in the United States as a dietary supplement, instead of a medicine, bypassing FDA regulation."[50]

67.    Upon information and belief, Defendant did not provide the required Parent's Choice Gripe Water advertising to the FDA within the 30-day period which is required by federal law. Further, there is no FDA disclaimer on the labeling or Defendant's website which also required by federal law.

68.    Defendant's advertising, labeling, and Website Claims constitute violations of federal and state law.

## THE IMPACT OF DEFENDANT'S WRONGFUL CONDUCT

69.    Defendant has ignored California law, federal regulations, and the scientific evidence demonstrating Parent's Choice Gripe Water ineffectiveness. It has conveyed and continues to convey that Parent's Choice Gripe Water is a "dietary supplement" (it is not because Defendant

---

[47]    FDA Warning Letter to Proctor & Gamble Company, dated April 10, 2020, available via search function at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters.

[48]    FDA Warning Letter to SmartyPants Vitamins, dated June 28, 2021, available via search function at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters.

[49]    https://www.accessdata.fda.gov/cms_ia/importalert_190.html (last visited Nov. 9, 2022)

[50]    https://healthy.kaiserpermanente.org/health-wellness/health-encyclopedia/he.colic-harmful-treatments.hw31230 (last visited Nov. 29, 2022).

CLASS ACTION COMPLAINT

1    does not comply with the regulations) capable of benefiting the symptoms of colic (it does not).

2         70.     As the manufacturer and distributor of Parent's Choice Gripe Water, Defendant

3    possesses specialized knowledge regarding its content and effects of its ingredients, and Defendant

4    is in a superior position to know whether Parent's Choice Gripe Water works as advertised and is

5    safe for infants and children.

6         71.     Specifically, Defendant knew, but failed to disclose, or should have known, that

7    Parent's Choice Gripe Water is a product that is unlawfully sold, cannot benefit the symptoms of

8    colic, and may harm infants.

9         72.     Defendant knew, but failed to disclose, or should have known, that Parent's Choice

10   Gripe Water is ineffective at relieving the symptoms of colic because the evidence-based science

11   has determined that Parent's Choice Gripe Water does not relieve the signs and symptoms of colic.

12        73.     Defendant knew, but failed to disclose, or should have known, that Parent's Choice

13   Gripe Water can harm infants.

14        74.     Plaintiff and the Class members have been and will continue to be deceived or misled

15   by Defendant's false and deceptive colic-relief representations.

16        75.     Defendant's colic-relief representations and omissions were a material factor in

17   influencing Plaintiff's and the class members' decision to purchase Parent's Choice Gripe Water.

18   In fact, the only purpose for purchasing Parent's Choice Gripe Water is to obtain the promised colic-

19   relief benefits. Defendant's conduct has injured Plaintiff and the class members because Parent's

20   Choice Gripe Water does not provide the advertised benefits and can harm infants and children. Had

21   Plaintiff and other reasonable consumers known this, they would not have purchased Parent's

22   Choice Gripe Water or would not have paid the prices they paid. Furthermore, had Plaintiff and

23   other reasonable consumers known that Parent's Choice Gripe Water is not a dietary supplement

24   and cannot be legally sold, they would not have purchased Parent's Choice Gripe Water or would

25   not have paid the prices they paid.

26        76.     Parent's Choice Gripe Water retails for approximately $6 per unit. Because of

27   Defendant's unlawful, false, and deceptive advertising, Parent's Choice Gripe Water has become

28

one of the highest-selling products in the gripe water category.

## CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this class action pursuant Cal. Code. Civ. Proc. § 382 on behalf of the following classes:

> **Multi-State Class (the "Class)**
> All persons who purchased Parent's Choice Gripe Water for personal use in California or other states with similar laws until the date notice is disseminated.

> **California Class (the "Subclass")**
> All persons in California who purchased Parent's Choice Gripe Water for personal use until the date notice is disseminated.

78.    Excluded from the from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

79.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

80.    The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

81.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

82.    <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

CLASS ACTION COMPLAINT

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c. Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive the public;

d. Whether Plaintiff and the Class are entitled to injunctive relief;

e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

83.    Typicality: Plaintiff is a member of the Classes Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

84.    Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating Plaintiff's rights; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

85.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

86.  In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

87.  Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

88.  Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide

injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## COUNT I

### Violation of Consumer Legal Remedies Act ("CLRA")
### Civil Code §§ 1750, *et seq*

89.    Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs as if fully set forth verbatim herein.

90.    Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

91.    At all times relevant hereto, Plaintiff and members of the Class were "consumer[s]," as defined in Civil Code section 1761(d).

92.    At all relevant times, Defendant constituted a "person," as defined in Civil Code section 1761(c).

93.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in Civil Code section 1761(a).

94.    The purchases of the Products by Plaintiff and members of the Class were and are "transactions" within the meaning of Civil Code section 1761(e).

95.    Defendant disseminated, or caused to be disseminated, through its advertising—including Defendant's Website Claims that the Products are a treatment to the flu and the symptoms of colic and are lawfully sold in the United States which they are not because the Products do not provide relief from the flu, the symptoms of colic, and are illegal unapproved drugs. Defendant's representations violate the CLRA by:

(a)    Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Civil Code § 1770(a)(5));

(b)    Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Civil Code § 1770(a)(7));

(c)    Defendant advertised the Products with an intent not to sell the Products as advertised (Civil Code § 1770(a)(9)); and

CLASS ACTION COMPLAINT

(d)     Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Civil Code § 1770(a)(16)).

96.     Defendant violated the CLRA because the Products do not relieve the symptoms of colic (e.g., stomach discomfort, gassiness). Defendant knew or should have known that its Products do not relieve the symptoms of colic, that the Products can harm infants, and that the labeling and Website Claims are illegal.

97.     Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights and was wanton and malicious.

98.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that its Products have characteristics which they do not have.

99.     Pursuant to Civil Code section 1782(d), Plaintiff and members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein, and for restitution and disgorgement.

100.    Pursuant to Civil Code section 1782, on November 30, 2022, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Defendant has failed to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the CLRA. Thus, Plaintiff seeks claims for actual, punitive, and statutory damages, as appropriate.

101.    Pursuant to § 1780(d) of the CLRA, attached as **Exhibit 2** is an affidavit showing that this action was commenced in a proper forum.

## COUNT II

### Violation of False Advertising Law
### Business & Professional Code §§ 17500, *et seq.*

102.    Plaintiff and members of the Class reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

103. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

104. California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,…in any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning…personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

105. Throughout the Class Period, Defendant committed acts of false advertising, as defined by § 17500, by using false and misleading statements to promote the sale of the Products, as described above, including but not limited to, representing that Parent's Choice Gripe Water could relieve stomach discomfort and colic in newborns, when in fact they could not.

106. Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

107. Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

108. As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Class would not have purchased the Products if they had known the true facts regarding the effectiveness and safety of the Products; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations about the Products; (c) the Products did not have the promised quality, effectiveness, or value; (d) the Products can cause harm to infants which was not disclosed by Defendant.

109. Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective advertising and disclosures to consumers. Plaintiff and members of the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all

monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

## COUNT III

### Violation of Unfair Competition Law
### Business & Professional Code §§ 17200, *et seq.*

110.   Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

111.   Plaintiff brings this claim individually and on behalf of members of the California Subclass against Defendant.

112.   Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for violations.

113.   "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

114.   Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

115.   Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA and FAL. By failing to comply federal and state regulations governing drugs and dietary supplements, Defendant has also violated 21 U.S.C. §§ 343(r)(6), 343(a), 321(g)(1)(B), 332-334 and California Health & Saf. Code §§ 109925, 110100, 111550. Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by using unlawful, false, and misleading statements to promote the sale of the Products, as described above.

116.   Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends

public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiff and members of the California Subclass arising from Defendant's conduct outweighs the utility, if any, of those practices.

117.   Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Products will provide relief for stomach discomfort for their newborns and are safe for infants to consume. Defendant's practice of injecting misinformation into the marketplace about the capabilities of its Products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about Products for newborns. Taking advantage of that trust, Defendant misrepresents the effectiveness and safety of its Products to increase its sales. Consumers believe that Defendant is an authority on the effectiveness, safety and quality of gripe water Products for their newborns and therefore believe Defendant's representations that its Products can provide stomach relief for their newborns without any harm.

118.   Defendant's conduct described herein, violated the "fraudulent" prong of the UCL by representing that the Products were effective at providing relief related for stomach discomfort in newborns, when in fact they were not.

119.   Plaintiff and members of the California Subclass are not sophisticated experts with independent knowledge of the formulations, safety, or efficacy of the Products, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

120.   Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

121.   As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the California Subclass have suffered injury and actual out of pocket losses as a result of Defendant's unfair, unlawful, and fraudulent business acts and practices because: (a) Plaintiff and members of the California Subclass would not have purchased the

Products on the same terms if they had known the true facts regarding the effectiveness, contents, and potential harm that can result from consumption of the Products; (b) Plaintiff and members of the California Subclass paid a price premium due to the misrepresentations of Defendant's Products; and (c) Defendant's Products did not have the quality, safety, effectiveness, or value as promised.

122.   Pursuant to California Business & Professions Code § 17203, Plaintiff and members of the California Subclass are therefore entitled to: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

**COUNT IV**

**Unjust Enrichment**

123.   Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

124.   Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

125.   Plaintiff and Class members conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them. Defendant has knowledge of such benefits.

126.   Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that the Products were effective in treating stomach discomfort and colic. This misrepresentation cause injuries to Plaintiff and Class Members, because they would not have purchased the Products if the true facts regarding the effectiveness of the Products were known.

127.   Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

29

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

128.   Plaintiff demands a trial by jury on all issues so triable.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class and Subclass, requests for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class and the California Subclass, and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass members;

(b) An order declaring Defendant's conduct violates the statutes referenced herein;

(c) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes;

(d) Awarding monetary damages, including treble damages

(e) Awarding punitive damages;

(f) Awarding Plaintiff and the Class and the California Subclass Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: January 9, 2023                    **CROSNER LEGAL, P.C.**

By: */s/ Craig W. Straub*
Michael R. Crosner
Zachary M. Crosner
Chad A. Saunders
Craig W. Straub

Attorneys for Plaintiff

CLASS ACTION COMPLAINT

# EXHIBIT 1

Cyber deals are here! Save on can't-miss finds. Shop deals

Walmart ›‹   ⊞ Departments   ≡ Services

Search everything at Walmart online and in store.

♡ Reorder My Items   Hi, Craig S Account   🛒 Cart

🌀 How do you want your items? ∨ | ⌖ 4033 Haines St ⌂ San Diego Store      Grocery & essentials   Up to $300 off laptops   Apparel   Home   Top Toys, Low Prices   Character Shop   Deals for days   Walmart+

Health and Medicine / Children's Health / Infants' Health / Infants' Digestive Health / All Infants' Digestive Health

GEL BLASTER   Out of this world fun  Eco-friendly blaster toys. Shop now

Sponsored

100+ bought since yesterday

♡

Parent's Choice

**Parent's Choice Gripe Water, Unflavored, 4 oz**

★★★★★ (4.4) 79 reviews

**$6.42** $1.61/fl oz

Price when purchased online ⓘ

[ Buy now ]   [ − 1 added + ]

🚚 Shipping, arrives by tomorrow to 4033 Haines St

🏬 Pickup **not available** at San Diego Store
Check availability nearby

⟳ Sold and shipped by Walmart.com

↩ Free 90-day returns  Details

Walmart+  Your favorite items delivered
Save 5% with W+ subscriptions. Subscription terms apply.

○ Subscribe with Walmart+ ⓘ         $6.10 $6.42
                                      monthly

○ One time purchase $6.42

♡ Add to list    🗒 Add to registry

Walmart+  Get free delivery, shipping and more*
*Restrictions apply. Start 30-day free trial

Best seller                    Sponsored

                               **$12.47** $3.04/fl oz
                               Mommy's Bliss Gripe Water
                               Original, Relieves Stomach...
                               ★★★★★ 954
                               Pickup  Delivery
                               2+ day shipping
                               [ + Add ]

Roll over image to zoom in
🔍

## About this item

### Product details                                                    ⌃

Herbal Supplement with Organic Ginger & Fennel Extracts, 4oz

Help relieve your baby's upset tummy with Parent's Choice Original Gripe Water, 2 Weeks+. This herbal supplement solution
helps treat gassiness and stomach discomfort. Our 4-fluid ounce package is convenient for storing in your medicine cabinet or
packing in a baby bag for on-the-go use. Discomfort in your little ones stomach can be frustrating and upsetting, but it's simple
to treat. All you need to do is slowly dispense the liquid gripe water towards the side of your child's inner cheek, using the
provided dropper or syringe up to 6 times in a 24-hour period. Your baby will be back to their happy and playful self in no time.

Parent's Choice provides parents with baby and toddler products you need at a price that won't push your budget over the edge.
We offer everything you need from bath time to bed time and every time in between, all with the high quality we know your
little one needs.

• Gripe water herbal supplement with organic ginger & fennel extracts
• 4 fl oz supplement
• Ideal for children 2 weeks and older
• Dye & paraben-free
• No refrigeration needed
• 100% vegetarian & vegan liquid dietary supplement

ⓘ We aim to show you accurate product information. Manufacturers, suppliers and others provide what you see here, and we
have not verified it. See our disclaimer

### Specifications                                                     ⌃

**Features**
Dye & paraben-free, No refrigeration needed, Gripe water herbal supplement with organic ginger & fennel extracts, 4fl oz
supplement, 100% vegetarian & vegan liquid dietary supplement, Ideal for children 2 weeks and older

**Brand**
Parent's Choice

**Assembled Product Weight**
0.27 lbs

**Assembled Product Dimensions (L x W x H)**
2.25 x 1.75 x 5.25 Inches

### Indications                                                        ⌃

**Health Concern**
Flu

### Ingredients                                                        ⌃

**Ingredients**
ORGANIC GINGER EXTRACT, ORGANIC FENNEL EXTRACT, PURIFIED WATER, VEGETABLE GLYCERIN, SODIUM
BICARBONATE, CITRUS BIOFLAVONOID EXTRACT, CITRIC ACID, POTASSIUM SORBATE

⤸ Report incorrect product information

## Similar items you might like
Based on what customers bought

100+ bought since yesterday   500+ bought since yesterday        500+ bought since yesterday

♡                    ♡                    IMMUNE        ♡
                                          SUPPORT
                     XYZAL                                              ❯



+ Add        + Add        + Add        + Add

$5.12 $2.56/fl oz    $10.12 $2.02/fl oz    $18.57 $2.38/fl oz    $3.94 $1.97/fl oz
Parent's Choice Baby    Xyzal Children's    Sambucol Black    Parent's Choice
Cough Syrup, 2 fl. oz.    Allergy 24HR Oral    Elderberry Kids Syrup    Infants' Pain and Fever,
          Solution (5 Oz)...    7.8 oz    Dye Free, Grape, 2 Fl...
★★★★☆ 12         ★★★★☆ 157     ★★★★☆ 155     ★★★★☆ 46

Pickup  Delivery    Pickup  Delivery    Pickup  Delivery    Pickup  Delivery
2-day shipping    2-day shipping    2-day shipping    1hr day shipping

**More items to consider**
Based on what customers bought.



Options        + Add        + Add        Options

+19 options     Sponsored
From $7.27    $4.97    $4.17 99¢/ea    From $7.27
Luvs Diapers, Size 0,    Nuby Nana Nubs Gum    Parent's Choice    Luvs Diapers, Size 0,
40 Count    Massager Teether    Premium Nursing    40 Count
          Pads, 42 Count
★★★★☆ 6888    ★★★★☆ 65    ★★★★☆ 109    ★★★★☆ 3892

Pickup  Delivery    Pickup  Delivery    Pickup  Delivery    Pickup  Delivery
          3+ day shipping    3+ day shipping



Earn 5% cash back on Walmart.com. See if you're pre approved with no credit risk.  Learn more

**Products you may also like**                    Sponsored



+ Add        + Add        + Add        + Add

Now $9.35 $10.09    $12.47 $3.06/fl oz    $12.46    $7.88
Lactaid Fast Act    Mommy's Bliss Gripe    Lactaid Original    Lactaid Fast Act
Lactose Intolerance    Water Original,    Strength Lactose    Lactose Relief
Caplets, 32 Travel...    Relieves Stomach...    Intolerance Relief...    Chewables, Vanilla, 3...
★★★★☆ 6176    ★★★★☆ 106    ★★★★☆ 357    ★★★★☆ 245

3+ day shipping    Pickup  Delivery    Pickup  Delivery    Pickup  Delivery
          3+ day shipping    2-day shipping    3+ day shipping

# EXHIBIT 2

1

**CROSNER LEGAL, P.C.**
Michael R. Crosner (SBN 41299)

2
Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)

3
Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301

4
Beverly Hills, CA 90210
Tel: (310) 496-5818

5
Fax: (310) 510-6429
mike@crosnerlegal.com

6
zach@crosnerlegal.com
chad@crosnerlegal.com

7
craig@crosnerlegal.com

8
Attorneys for Plaintiff

9

10

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

11

12
NIKOLAS CHAPLIN, individually and on behalf of all others similarly situated,

13
                    Plaintiff,

14
        v.

15
WALMART INC.,

16
                    Defendants.

17

18

Case No.:

**CLASS ACTION**

**AFFIDAVIT OF CRAIG W. STRAUB PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)**

**JURY TRIAL DEMANDED**

19

20

21

22

23

24

25

26

27

28

1

1    I, CRAIG W. STRAUB, declare as follows:

2    1.    I am an attorney duly licensed to practice before all of the courts of the State of

3    California. I am an attorney at the law firm of Crosner Legal, P.C., one of the counsel of record for

4    plaintiff in the above-entitled action.

5    2.    Defendant Walmart Inc., has done, and is doing, business in California, including in

6    this county. Such business includes the marketing, promotion, distribution, and sale of its Parent's

7    Choice Gripe Water products at issue.

8    I declare under penalty of perjury under the laws of the State of California that the foregoing

9    is true and correct. Executed January 9, 2023, at San Diego, California.

10

11    *s/ Craig W. Straub*
      CRAIG W. STRAUB

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF CRAIG W. STRAUB PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)